<u>**ON REHEARING EN BANC**</u>

<u>**PUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 12-4603**

————————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MARCEL APARICIO-SORIA,

Defendant – Appellant.

————————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Deborah K. Chasanow, Chief District
Judge.  (8:11-cr-00616-DKC-1)

————————

Argued:  December 12, 2013          Decided:  January 14, 2014

————————

Before TRAXLER, Chief Judge, and WILKINSON, NIEMEYER, MOTZ,
KING, GREGORY, SHEDD, DUNCAN, AGEE, DAVIS, KEENAN, WYNN, DIAZ,
FLOYD, and THACKER, Circuit Judges.

————————

Vacated and remanded by published opinion. Judge Davis wrote the
opinion, in which Chief Judge Traxler, and Judges Motz, King,
Gregory, Shedd, Duncan, Agee, Keenan, Wynn, Diaz, Floyd, and
Thacker joined. Judge Wilkinson wrote a dissenting opinion, in
which Judge Niemeyer joined.

————————

**ARGUED:** Sapna Mirchandani, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant.  Paul Nitze,
OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for
Appellee.  **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE

OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

DAVIS, Circuit Judge:

The issue before us is whether the Maryland crime of resisting arrest, Md. Code, Crim. Law § 9-408(b)(1), "has as an element the use, attempted use, or threatened use of physical force against the person of another," and therefore qualifies categorically as a "crime of violence" within the meaning of U.S. Sentencing Guideline § 2L1.2, the reentry Guideline. We hold that it does not.

The reentry Guideline advises federal district judges to increase by twelve or sixteen the offense level of a defendant convicted of unlawfully entering or remaining in the United States if that defendant has a prior felony conviction for "a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A). "Crime of violence" is defined in the Commentary to the reentry Guideline as including two groups of offenses: the first group is certain listed offenses, such as murder, kidnapping, or arson; the second is "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). This latter provision is referred to as "the force clause."

Having pleaded guilty to one count of unlawful reentry of a deported alien after sustaining an aggravated felony conviction, 8 U.S.C. §§ 1326(a) and (b)(2), Marcel Aparicio-Soria was

sentenced in the District of Maryland to a thirty-six month term of imprisonment and a three-year term of supervised release. The Government had argued at sentencing that Aparicio-Soria's sentence should be enhanced according to the force clause of the reentry Guideline because he has a prior 2006 Maryland conviction for resisting arrest. The district court agreed, imposing the sentence based on two rulings: first, it ruled that Aparicio-Soria's prior conviction for resisting arrest did not qualify categorically as a crime of violence because "the degree of force" required for a conviction pursuant to the Maryland resisting arrest statute is less than that contemplated by the force clause, J.A. 109; and second, it applied the modified categorical approach to evaluate the relevant documentation surrounding Aparicio-Soria's resisting arrest conviction, and it concluded that his particular conviction qualified as a crime of violence. The documentation indicated that Aparicio-Soria had bitten a law enforcement officer attempting to arrest him.

On appeal, the parties agree, in light of intervening precedent, Descamps v. United States, 133 S. Ct. 2276, 2282 (2013), that the district court's application of the modified categorical approach was error, but they disagree about the result reached with respect to the categorical approach. In Descamps, the Supreme Court held that federal sentencing courts are prohibited from applying the modified categorical approach

when the state crime in question "has a single, indivisible set of elements." 133 S. Ct. at 2282. Because the Maryland crime of resisting arrest has a single and indivisible set of elements, infra at 7, Descamps makes clear that the district court's application of the modified categorical approach was improper.

We may, however, affirm the district court on any ground in the record, including those rejected by the district judge. United States v. Moore, 709 F.3d 287, 293 (4th Cir. 2013). Accordingly, the Government maintains that we should affirm the judgment because the Maryland crime of resisting arrest qualifies categorically as a crime of violence under the force clause of the reentry Guideline. Aparicio-Soria defends the district court's ruling on this point, arguing that his prior Maryland conviction for resisting arrest does not qualify categorically as a crime of violence. We review the district court's ruling de novo. United States v. Gomez, 690 F.3d 194, 197 (4th Cir. 2012).

This case requires application of the framework outlined by the Supreme Court in Johnson v. United States, 130 S. Ct. 1265, 1269-70 (2010), in which the Court compared the Florida offense of felony battery to the force clause in the Armed Career Criminal Act to assess whether the former qualifies categorically as a "violent felony." Although Johnson involved construction of the term "violent felony" in the Armed Career

5

Criminal Act and not the reentry Guideline,[1] we nevertheless consider its interpretation controlling in this case because the language of the force clause in the Armed Career Criminal Act and the reentry Guideline is identical, and we have previously relied on case law construing one provision as helpful in construing the other. United States v. Montes-Flores, 736 F.3d 357, 363 (4th Cir. 2013).

To determine whether a state crime qualifies categorically as a crime of violence pursuant to the force clause of the reentry Guideline, we compare the force clause with the elements of the state crime at issue and assess whether the latter contains as "an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). As required by the categorical approach, our analysis is restricted to "the fact of conviction and the

---

[1] The relevant provision of the Armed Career Criminal Act provides that a defendant convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g), is subject to a fifteen-year mandatory minimum sentence if he has three previous "violent felony" convictions. 18 U.S.C. § 924(e)(1). "Violent felony" is defined in the statute as any crime "punishable by imprisonment for a term exceeding one year" that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause), or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B). The second category involving physical injury is referred to as "the residual clause."

statutory definition of the prior offense." Taylor v. United States, 495 U.S. 575, 603 (1990) (construing the Armed Career Criminal Act). To the extent that the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law. Johnson, 130 S. Ct. at 1269.

We begin with the force clause. The Supreme Court has given the term "physical force" as used in an identical force clause a particular meaning: "violent force – that is, force capable of causing physical pain or injury to another person." Id. at 1271. This construction of violent force specifically excludes from consideration "the slightest offensive touching," id. at 1270, and it does so in large part because of the context in which the term appears – in a definition of the term "violent felony." See id. at 1271.

We next analyze the prior state crime. The Maryland statute criminalizing resisting arrest provides in pertinent part that "[a] person may not intentionally . . . resist a lawful arrest." Md. Code, Crim. Law § 9-408(b)(1). Although resisting arrest was previously a common law crime, the Maryland General Assembly's codification of it did not change the elements of resisting

arrest,[2] <u>Williams v. State</u>, 79 A.3d 931, 944 (Md. 2013), which are:

(1) that a law enforcement officer attempted to arrest the defendant;

(2) that the defendant knew that a law enforcement officer was attempting to arrest [him] [her]; and

(3) that the defendant refused to submit to the arrest and resisted the arrest by force.

Maryland Pattern Jury Instructions - Criminal 4:27 (1995).

The third element of a Maryland resisting arrest offense requires resistance "by force." Precedent from the state's highest court indicates that the force required for conviction of resisting arrest is no more than the type of de minimis force constituting an offensive touching. In <u>Nicolas v. State</u>, 44 A.3d 396, 409 (Md. 2012), the Maryland Court of Appeals held that convictions for resisting arrest and second degree assault merge because "[a]ll of the elements of second degree assault are included within the offense of resisting arrest." And in this context, the court stated that the force required for sustaining a resisting arrest conviction "is the same as the 'offensive physical contact' that is required to find a defendant guilty of

_____

[2] The Supreme Court has not yet addressed whether – and if so, how - the categorical approach applies to common law crimes. <u>See</u> <u>Descamps</u>, 133 S. Ct. at 2291. Discerning no compelling reason to reach a contrary conclusion, however, we have held that the categorical/modified categorical typologies apply equally to statutory and common law crimes. <u>Montes-Flores</u>, 736 F.3d at 367.

the battery variety of second degree assault." Id.[3] (citation omitted). The salient point is that the force requirement of the Maryland crime of resisting arrest requires only offensive physical contact.

The last step in the analysis is comparing the force clause with the elements of Maryland resisting arrest. The precise issue before us is whether a Maryland conviction for resisting arrest contains as an element the use, attempted use, or threatened use of violent force capable of causing physical pain or injury against another person. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); Johnson, 130 S. Ct. at 1271. It does not. According to the Court of Appeals of Maryland, the force required for conviction pursuant to the Maryland resisting arrest statute is merely "offensive physical contact," Nicolas, 44 A.3d at 409, a threshold far lower than violent force capable of causing pain or injury to another. We have recently emphasized this point, applying Descamps to hold that the Maryland offense of second degree assault (1) contains indivisible elements and therefore is not amenable to the modified categorical approach, and (2) categorically is not a crime of violence, United States v. Royal, 731 F.3d 333, 341-42 (4th Cir. 2013), Karimi v. Holder,

_____

[3] At the sentencing hearing in this case, the district court expressly relied on Nicolas, 44 A.3d at 409, in concluding that resisting arrest under Maryland law does not categorically require violent force.

715 F.3d 561, 568 (4th Cir. 2013), thereby abrogating several of our pre-Descamps precedents that had applied the modified categorical approach to Maryland assault convictions. See United States v. Harcum, 587 F.3d 219, 224 (4th Cir. 2009); United States v. Simms, 441 F.3d 313, 315 (4th Cir. 2006); United States v. Coleman, 158 F.3d 199, 202 (4th Cir. 1998); United States v. Kirksey, 138 F.3d 120, 125 (4th Cir. 1998).

The Government makes several arguments in response, none of which we find persuasive. It cites Rich v. State, 44 A.3d 1063 (Md. Ct. Spec. App. 2012), an opinion from Maryland's intermediate appellate court, for the proposition that the Maryland resisting arrest statute criminalizes "conduct that by its very nature is violent and physically aggressive." Govt. Br. 12. This is true as a matter of simple logic, because resisting arrest could certainly be committed in that fashion. But here we deal with elements, not conduct. Descamps, 133 S. Ct. at 2283. The Government's argument also fails because, to the extent that Rich can even be read in the way the Government reads it, it would be inconsistent with the law as articulated by Maryland's highest court in Nicolas – and that is the law that binds us, not an opinion from Maryland's intermediate appellate court.[4]

---

[4] The Government argues that the discussion in Nicolas, 44 A.3d at 409, of the force required for a resisting arrest conviction is dicta irrelevant to whether resisting arrest and (Continued)

Johnson, 130 S. Ct. at 1269. Rich has never been cited by the Maryland Court of Appeals and its reasoning has never been adopted. Indeed, the Court of Appeals' most recent recitation of the elements of the crime of resisting arrest in Maryland altogether omits the force element and replaces it with a "refus[al] to submit" element. Williams, 79 A.3d at 944 ("(1) [T]he defendant was arrested; (2) the arrest was lawful; and (3) the defendant refused to submit to the arrest.") (citations and quotations omitted). There is no plausible argument that violent force of the type contemplated by the force clause of the reentry Guideline is a required element of the Maryland crime of resisting arrest. Cf. United States v. Romo-Villalobos, 674 F.3d 1246, 1249 (11th Cir. 2012) (holding that the Florida crime of resisting arrest "by offering or doing violence to the person of such officer" is a "crime of violence" pursuant to the force clause of the reentry Guideline) (citation omitted) (emphasis added).

The Government persists, citing two of our prior cases - United States v. Wardrick, 350 F.3d 446, 454-55 (4th Cir. 2003), and United States v. Jenkins, 631 F.3d 680, 683-85 (4th Cir.

---

second degree assault convictions merge. Although the reasoning might be slightly overbroad for the holding, that does not undermine the basic point in Nicolas that there is no daylight between the force elements in the Maryland crimes of second degree assault and resisting arrest.

2011) – to buttress its argument that Maryland resisting arrest is an "inherently violent" crime that "poses a substantial risk of physical injury to officers." Govt. Br. 13. This argument also fails, and for a simple reason: Wardrick and Jenkins involved different clauses of different sentencing provisions. Both cases involved "the residual clause," which categorizes prior state offenses as federal sentencing predicates if they criminalize "conduct that presents a serious potential risk of physical injury to another." This language appears in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), and the career offender Guideline, U.S.S.G. § 4B1.2(a)(2).

But it is not in the reentry Guideline. That is why Wardrick and Jenkins are irrelevant to this case. In Wardrick, 350 F.3d at 454, we held that Maryland resisting arrest was a "violent felony" pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), but there we asked whether the crime fell under the residual clause, and thus criminalized "conduct that present[ed] a serious potential risk of physical injury to another"; similarly, in Jenkins, 631 F.3d at 682-85, we held that Maryland resisting arrest was a "crime of violence" within the meaning of the residual clause of the career offender Guideline, U.S.S.G. § 4B1.2(a)(2), but again we were asking whether resisting arrest "involve[d] conduct that presents a serious potential risk of physical injury to another."

The Government pushes on. After all, it contends, offenses that criminalize conduct that presents a serious risk of physical injury cannot be far removed from those that contain as an element the use of violent force. It is perhaps instinctively alluring to conflate the risk of physical injury with the use of violent force, but we refuse to do so because it is directly contrary to Supreme Court and sound Fourth Circuit precedent: Sykes v. United States, 131 S. Ct. 2267, 2273 (2011), in which the Supreme Court held that the Indiana offense of resisting law enforcement through felonious vehicle flight qualified as a violent felony under the residual clause of the Armed Career Criminal Act, but not under the force clause of the same statute; and United States v. Jarmon, 596 F.3d 228, 230 (4th Cir. 2010), in which we held that the North Carolina crime of "larceny from the person" was a crime of violence under the residual clause of the career offender Guideline, but not under the force clause of the same Guideline. The basic point is that the Government's reliance on Wardrick and Jenkins is misplaced because a crime involving conduct that presents a serious potential risk of physical injury to another, the residual clause inquiry, is not the same for federal sentencing purposes as a crime that has as an element the use or attempted use of violent force, the force clause inquiry.

13

The Government's last argument is that there is no way to be convicted of resisting arrest in Maryland without the use of violent force - and it cites thirty-eight published opinions by the Maryland appellate courts to support its claim, all of which arguably involved the defendant's use of violent force. Armed with this mountain of cases, the Government urges us to avoid exercising our "legal imagination" when analyzing the resisting arrest offense, and instead asks us to examine whether there is "a realistic probability, not a theoretical possibility, that [Maryland] would apply its statute to conduct that falls outside" the realm of violent force. Govt. Br. 19-21 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).

But this case does not require an exercise of imagination, merely mundane legal research skills: we have precedent from Maryland's highest court stating that the degree of force required as an element of Maryland resisting arrest is "offensive physical contact," Nicolas, 44 A.3d at 409, and crimes requiring offensive physical contact are not crimes of violence containing an element of violent force, as required under federal enhanced sentencing regimes. Royal, 731 F.3d at 341-42; Karimi, 715 F.3d at 568.

Even with its raft of cases, the Government's argument misses the point of the categorical approach and "wrenches the Supreme Court's language in Duenas-Alvarez from its context."

14

United States v. Torres-Miguel, 701 F.3d 165, 170 (4th Cir. 2012). We do not need to hypothesize about whether there is a "realistic probability" that Maryland prosecutors will charge defendants engaged in non-violent offensive physical contact with resisting arrest; we know that they can because the state's highest court has said so. It may be that Maryland prosecutors tend to charge too many offenders with resisting arrest when they could charge far more serious crimes, or it may be that we have a skewed universe of cases from the hundreds of resisting arrest convictions sustained each year. Either way, it does not really matter because the "key" is "elements, not facts," Descamps, 133 S. Ct. at 2283, and violent force is simply not an element of resisting arrest in Maryland. And that ends the inquiry.

The judgment of the district court is vacated and the case is remanded for resentencing in accordance with this opinion.

VACATED AND REMANDED

WILKINSON, Circuit Judge, with whom NIEMEYER, Circuit Judge, joins, dissenting:

The majority is right that the categorical approach governs here. It is wrong to apply that approach in a manner that is heedless of the pertinent Supreme Court decisions and wholly untethered from reality itself. Decade upon decade of Maryland resisting arrest law paints a clear picture of violent force unleashed against arresting officers. Case after case recounts violent outbursts by defendants: fighting, pushing, and hitting an officer; biting an officer with sufficient force to break the skin; dragging an officer to the ground; swinging handcuffs at an officer; wielding a straight-edged razor against an officer and slashing his arm; driving a vehicle in an attempt to run an officer over; punching an officer repeatedly in the head; stabbing an officer with a ballpoint pen; tearing the badge off an officer's uniform and swinging at the officers with the badge's pin; kicking an officer in the groin; striking an officer in the stomach and chest. See Appendices I & II.

This is the offense that the majority claims is not a crime of violence. And the above is but a sampler.

Whether described as a fracas or a physical struggle, the force underlying the Maryland resisting arrest offense is, and has been, consistently violent. The list of violent acts committed by defendants in this context is both lengthy and

uniform. By contrast, any incident involving mere "offensive touching" is wholly absent. Johnson v. United States, 559 U.S. 133, 139-40 (2010). The conviction of the limp arrestee is a myth. For the Maryland courts insist upon the application of force as a condition of conviction, see Williams v. State, 79 A.3d 931, 946 (Md. 2013), and passive resisters do not employ force.

A chief aim of the resisting arrest offense is to protect the physical safety of the arresting officer. In holding this not a crime of violence, the majority denies this purpose its rightful effect. Even for judges as capable as my good colleagues, there is a danger in ruling at a far and cosseted remove. It is always sad to say what should never need to be said: these street encounters are not tea and crumpets. It is silly to pretend the force directed at police officers is nothing more than a mere touch. It is one thing to recognize that police officers are, like the rest of us, deeply fallible. It is fair to note that their failings carry greater consequence because they wear the badge of state. It is right that law punish officers for their excesses and correct their mistakes. And yet, law must also respect their own need for personal safety and give them some small due. For law without law enforcement is impossible.

I do not know whether to refer to my friends in the majority as the simple majority, the super-majority, the ultra-majority, or the uber-majority, but this decision, even if it were unanimous, would still be very wrong. To deny, as the majority does, obvious effect to the term "crime of violence," is thus more than a negation of congressional intent. To deny that the unbroken litany of violent acts against police officers is even violent evinces more than an averted eye from its recipients. It breeds, in the end, a disrespect for law itself.

****

The question in this case may be simply posed: do the Supreme Court decisions in <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183 (2007), and <u>James v. United States</u>, 550 U.S. 192 (2007), apply to force clauses?

The force clause here is typical. It provides a sentencing enhancement for defendants previously convicted of any "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Force clauses such as this one are familiar features of our law. They appear both in statutes and in the Sentencing Guidelines. <u>See</u> 18 U.S.C. § 16(a); <u>id.</u> § 924(e)(2)(B)(i); U.S.S.G. § 4B1.2(a)(1). They represent Congress's attempt to ensure that those who engage (often repeatedly) in violent acts towards others receive

18

a commensurate punishment. How these clauses are applied and interpreted is important.

The contribution of Duenas-Alvarez and James is to make the sentencing of violent offenders a practical exercise. If those cases apply to force clauses, as I believe they do, it is certain that under the categorical approach, approved by the Supreme Court in Descamps v. United States, 133 S. Ct. 2276 (2013), the Maryland offense of resisting arrest is a crime of violence. Yet the majority refuses to apply these cases to the instant dispute, or indeed to apply them to any unlisted offense, with the consequence that large numbers of force and residual clause offenses are deemed, despite all evidence to the contrary, nonviolent.

In the face of the grounded and practical approach of Duenas-Alvarez and James, the majority takes abstract flight. It ignores James altogether and finds that resort to Duenas-Alvarez "misses the point of the categorical approach." Maj. op. at 14. In short, it gives James the silent treatment and Duenas-Alvarez the back of its hand insofar as they apply to force clauses. Contrary to the majority's logic, the proper application of Duenas-Alvarez and James mandates a single conclusion: that in "the ordinary case," James, 550 U.S. at 208, and in terms of a "realistic probability," Duenas-Alvarez, 549 U.S. at 193, resisting arrest convictions are limited to violent force

unleashed at another person, most often the officer making the arrest.

It remains the law of this circuit that Duenas-Alvarez and its successor James do not, as a matter of law, apply to unlisted offenses. United States v. Torres-Miguel, 701 F.3d 165, 170-71 (2012). Today's opinion not only references Torres-Miguel, but builds upon it. Maj. op. at 14-15. These two decisions directly contradict James, which explicitly applied both Duenas-Alvarez and its underlying rationale to unlisted offenses. James, 550 U.S. at 208 (applying Duenas-Alvarez to the unlisted offense of attempted burglary). Again, the majority does not so much as mention James. It makes no effort to resolve the glaring contradiction between its approach and that of the Supreme Court. The higher court applies Duenas-Alvarez and James to unlisted offenses. The lower court does not. I cannot fathom why.

The result of all this is the dramatic curtailment of the legitimate scope of force clauses. Despite the clear pattern of "the ordinary case," see James, 550 U.S. at 208, the overwhelming incidents of violent resistance to arrest in the Maryland precedents, and the nonexistent likelihood that Maryland would sustain a conviction in the absence of violent force, see Duenas-Alvarez, 549 U.S. at 193, the majority calls this offense, and by extension, the patently violent behavior

underlying it, nonviolent. This is precisely what Duenas-Alvarez and James said courts were not permitted to do.

The consequences stretch beyond the majority's refusal to apply established Supreme Court precedent. The majority introduces disuniformity in federal sentencing. It creates conflict among the circuits. It undermines congressional intent by carving out an exception to force clauses nowhere in their language. It declares that violent acts against those attempting to do nothing more than effect a lawful arrest do not register in the judicial consciousness and that, as a statutory matter, violence directed at law enforcement officers is not really violence after all.

I.

The Supreme Court's decisions on sentencing provisions for violent acts make good sense, especially if they are taken as a whole. Much of the early debate concerned whether a categorical or modified categorical approach to predicate offenses would apply. The categorical approach, in all but the specialized instance of a divisible statute, has prevailed. See Descamps, 133 S. Ct. at 2281-82. The categorical approach looks to the elements of a state crime to determine whether it qualifies as a federal sentencing predicate, while the modified categorical approach supplements this inquiry by permitting recourse to conclusive judicial documents, such as the plea colloquy

transcript or indictment. See Shepard v. United States, 544 U.S. 13, 26 (2005). One group of cases -- Taylor v. United States, 495 U.S. 575 (1990), and, more directly, Descamps -- addresses the question of what approach (the categorical or modified categorical) applies. A second set of cases -- Duenas-Alvarez and James -- addresses the question of how the categorical approach applies. These questions are distinct but complementary: the second set of cases is a bookend to the first. To apply one set of cases without the other leads to a badly distorted sentencing function. The majority here adopts a one-bookend approach.

A.

The categorical approach has significant benefits, namely, sparing district courts the need to explore the underlying facts of predicate convictions, and giving defendants the benefits of earlier plea bargains to lesser offenses. See Descamps, 133 S. Ct. at 2289. But the categorical approach also carries costs, namely that the actual facts of the particular predicate offense are ignored. In this case, for example, the defendant's predicate conviction was for the Maryland offense of resisting arrest. In the course of investigating the facts underlying this prior conviction, the district court cited the "Application for Statement of Charges." J.A. 110-11. According to that document, after an officer attempted to pull him over for illegally

22

crossing the painted lane markers, defendant accelerated to a high speed, struck a civilian's vehicle, and intentionally swerved towards an officer. Officers managed to deflate his tires, at which point defendant exited his vehicle and fled on foot into a hotel. Police eventually seized defendant and were compelled to taser him three times in order to subdue him. During the course of the struggle, defendant bit one of the officers. J.A. 56-57.

Under the categorical approach, these facts, although clearly violent, are excluded from consideration for the sake of promoting what are plainly significant systemic benefits. See Descamps, 133 S. Ct. at 2287. To offset the costs of factual exclusion, Duenas-Alvarez and James require an inquiry into what conduct actually underlies the customary or typical conviction for the predicate offense. Duenas-Alvarez, which addressed the listed offense of theft, held that:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.

549 U.S. at 193 (emphasis added). In order to satisfy this test, a defendant "must at least point to his own case or other cases

23

in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Id.

The James Court cited this language from Duenas-Alvarez and applied it to the unlisted offense of attempted burglary in the residual clause at issue in that case, which covered crimes that present a "serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). James observed that the categorical approach does not require "every conceivable factual offense covered by a statute [to] necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." 550 U.S. at 208. Instead, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id. (emphasis added). In short, "[a]s long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements" of the residual clause. Id. at 209.

B.

Nothing in the logic of Duenas-Alvarez or James renders the "realistic probability" test inapplicable to force clause predicates. But in refusing to discuss James or to give more than dismissive lip service to Duenas-Alvarez, the majority accepts the benefits of the categorical approach and wholly ignores the Supreme Court's effort to offset its costs. By

24

basing its inquiry purely on elements, the majority uses the most abstract approach to sentencing possible -- an approach divorced from the context and grounding that actual cases provide. The majority discards reality in favor of a formalism that is mandated neither by logic nor law.

The majority's refusal to consider case conduct as an interpretive guide to the elements of a crime is wanting on multiple counts. To begin with, matching state law elements with statutory or Guidelines provisions cannot be the whole inquiry for the obvious reason that most state offenses were not designed with federal sentencing enhancements in mind. There is no single catechism -- such as "violent force" -- that will resolve the disjunction. These predicates are simply not drafted, obligingly, along the lines of the majority's verbal litmus test. If the majority is going to insist on the invariable use of its particular phraseology as an element, then large numbers of the most violent offenses that plainly involve "the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 2L1.2 cmt. n.1(B)(iii), would manifestly fail to qualify. Prescribed iterations simply cannot be dispositive.

But the damage to federal sentencing wrought by the majority's approach is more serious than these mere practical problems would suggest. By putting such emphasis upon elements

alone, divorced from the practical inquiry mandated by Duenas-Alvarez and James, the majority has placed federal sentencing at a double remove from reality. Not only do we refrain for good and sufficient reason from investigating the facts underlying defendant's specific predicate conviction, but we are now also barred from examining the actual conduct involved in the mine run of state cases. The Supreme Court, of course, looks to state cases to identify the elements of a predicate offense, see, e.g., Sykes v. United States, 131 S. Ct. 2267, 2271, 2275 (2011); Johnson v. United States, 559 U.S. 133, 137-38 (2010), but has also consulted, illustratively, the actual conduct (as reflected in state decisions) to which the state statute or its common-law antecedent has been applied, see, e.g., Moncrieffe v. Holder, 133 S. Ct. 1678, 1686-87 (2013).

To effectively prohibit this inquiry into conduct is to pursue an exercise in abstraction for the very inquiry in the criminal justice system that is supposed to be the most grounded and individualized. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The majority's willingness to place limitations of every sort and variety upon the sentencing inquiry prizes formalism over reality, thus

26

upsetting the careful balance drawn by the federal sentencing regime. See Setser v. United States, 132 S. Ct. 1463, 1475 (2012) (Breyer, J., dissenting) (noting the Guidelines' compromise between real offense and charge offense sentencing).

It matters not that this latest limitation is one that does not pertain to the particular defendant's circumstances, because it definitely does pertain to the all-important question of whether his predicate offense was, "in the ordinary case," see James, 550 U.S. at 208, a violent crime. Supreme Court precedent cannot justify the majority's ruling. Descamps and Moncrieffe, for example, each examined underlying conduct in concluding that a state offense had been applied by state courts beyond its usual contours and thus failed to qualify as a predicate offense for federal sentencing purposes. 133 S. Ct. at 2282; 133 S. Ct. at 1686-87. By contrast, in artificially limiting the categorical approach, the majority is sending federal sentencing further into the ether. Under its decision, federal sentences will become progressively more blind.

## II.

The damage wrought by the majority's general approach to sentencing is compounded by its handling of the particular Maryland offense of resisting arrest. It has introduced not only an unwarranted amount of abstraction into the process, but disuniformity and conflict among the circuits to boot.

27

A.

The historic purposes of resisting arrest offenses are two-fold. The first is to safeguard the arresting officer from violent force at the hands of the arrestee. It can be dangerous to make an arrest, and the resisting arrest crime was designed to lessen the potential for serious harm. See, e.g., United States v. Jenkins, 631 F.3d 680, 685 (4th Cir. 2011); United States v. Wardrick, 350 F.3d 446, 455 (4th Cir. 2003); Rich v. State, 44 A.3d 1063, 1080 (Md. Ct. Spec. App. 2012). The second purpose is to protect the defendant arrestee from conviction for passive or nonviolent conduct which, if criminal at all, was traditionally covered by a lesser offense like obstruction of an officer in the performance of his duties. See Rich, 44 A.3d at 1071-73, 1080.

To serve these dual purposes, the offense has been limited to violent force directed, in most instances, at the arresting officer. In the classic case of Regina v. Bentley, 4 Cox C.C. 408, 408 (1850), for example, the defendant was convicted of resisting arrest after he "violently assaulted and seriously injured" the arresting officer. The facts recounted in Bentley continue to represent the paradigmatic offense conduct. Consistent with this common law understanding, Section 242.2 of the Model Penal Code cabins the offense to defendants who "create[] a substantial risk of bodily injury to the public

servant or anyone else, or employ[] means justifying or requiring substantial force to overcome the resistance." Maryland adheres to this conception of the offense: the underlying conduct described in the reported cases is, in the words of a state court, "consistently forceful." Rich, 44 A.3d at 1077. The pervasive focus on violent force serves to deter conduct that poses a serious threat to arresting officers.

Including violent force as an element of the offense also limits the discretion of discriminatory or overreaching prosecutors. As Rich notes, "[m]inor acts of evasion and resistance are sufficiently ambiguous to give rise to honest error, sufficiently elusive to encourage false allegations, and sufficiently commonplace to afford general opportunity for discriminatory enforcement." Id. at 1080 (internal quotation marks omitted). The Model Penal Code similarly concludes that "authorizing criminal punishment for every trivial act of resistance would invite abusive prosecution." § 242.1, explanatory notes. The two central purposes of the offense -- protecting officers from serious harm and protecting defendants from prosecutorial overreach -- thus dovetail in the requirement that a non-violent act will not suffice for conviction.

### B.

It is essential to comprehend the common understanding or nature of a state offense, even in crimes not specifically

29

listed or enumerated, when applying federal sentencing enhancements. Although the search for a generic definition is formally limited to the context of listed crimes, many state offenses retain traditional definitions shared by a host of jurisdictions and the common law. See Williams v. State, 79 A.3d 931, 944 (Md. 2013) (holding that the Maryland resisting arrest statute retains the offense's common law elements). Sentencing determinations will be all over the map unless courts inquire into the traditional understanding of predicate offenses with deep common law roots. A refusal to undertake this inquiry, and the resulting loss of uniformity in sentencing outcomes, would produce inequity on a large scale.

Here, there is no indication that Maryland has chosen to depart from the common understanding of resisting arrest as involving the violent application of force against the arresting individual. The Maryland Court of Appeals only recently reiterated the need to find force in resisting arrest adjudications. See Williams, 79 A.3d at 946. It defies belief to contend that the force employed in committing such a crime would be other than violent. To try to construct an argument on some supposed distinction between "force" and "violent force" in the context of these confrontations is semantics at its worst. Even convictions predicated on arguably lesser conduct -- such as a threat to kill the arresting officer, Barnhard v. State, 602

A.2d 701, 703 (1992) -- qualify under the "threatened use of physical force" proviso of the force clause. U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii). Our own precedent has recognized the potential for serious injury stemming from this offense. See Jenkins, 631 F.3d at 685; Wardrick, 350 F.3d at 455. Serious injury does not arise from subtle force. The word "resisting" itself means the application of active force, not mere passive noncompliance.

In Rich, as noted, the court stressed that violent force was essential to a resisting arrest conviction, and that the Maryland courts quite rightly and properly had sought to prevent the offense from metastasizing to cover nonviolent conduct. In the absence of violent force, Rich reversed the conviction. 44 A.3d at 1083. Whereas the majority pooh-poohs that decision as the mere utterance of an intermediate state appellate court, Rich remains the most comprehensive discussion of the Maryland offense available. The Maryland Court of Appeals has neither reversed nor disowned it, even when opportunities existed to do so. See Williams, 79 A.3d at 944. In fact, that distinguished court's handling of resisting arrest through the decades reflects Rich's own canvass of the case law and its own understanding.

The majority rests its whole analysis on the holding in Nicolas v. State that the Maryland crime of second-degree

31

assault merges with the Maryland crime of resisting arrest for sentencing purposes. 44 A.3d 396, 409 (Md. 2012). Although the issue presented in that case was whether the former qualified as a lesser-included offense of the latter, id. at 398, 409, the court nevertheless noted that the force required to sustain a conviction for resisting arrest was the same as the "offensive physical contact" required to sustain a conviction for the battery version of second-degree assault, id. at 409 (internal quotation marks omitted). The court's observation that identical levels of force are required was unnecessary to its holding, since second-degree assault would have qualified as an included offense as long as resisting arrest required any degree of force. The court's decision would not have changed, for example, had it concluded that resisting arrest required violent force. Indeed, the majority assiduously avoids characterizing the statement on which it relies as some sort of actual holding.

In basing its entire conclusion on this bit of dicta, the majority ignores Duenas-Alvarez's admonition that a defendant, in order to escape the application of a federal sentencing enhancement, must be able to identify concrete cases in which the predicate offense was actually applied in the manner he proposes. 549 U.S. at 193. This the defendant has never done. To be sure, Nicolas cited a hypothetical in which an individual holds a door closed in order to bar the officer's entry and

thereby prevent arrest. 44 A.3d at 408 n.5. But resort to "hypothesize[d] unusual cases" is exactly what James intended to prevent. 550 U.S. at 208.

Quite apart from the hypothetical world, defendant's conduct in Nicolas plainly included the use of violent force: he "pushed" one officer, "hit [another] in the face," and fought with one for "two to three minutes." The fight included "grabb[ing] each other and . . . pushing each other against the walls and hitting each other." Finally, he continued "fighting" and "struggl[ing]" "the whole way" to the police cruiser. 44 A.3d at 399-401. In view of the obvious violence involved, there was no need for the court to comment on the precise level of force required. By relying on an abstract pronouncement in a case addressing an altogether different issue and involving violent force of the most potent sort, the majority embraces precisely the type of unmoored analysis rejected by Duenas-Alvarez and James.

Defendant's burden is not an obscure one. All he has to do is show actual instances in which Maryland courts are sustaining convictions for resistance to arrest in the absence of violent force. He and the majority have succeeded in showing only the opposite. In conducting this whole inquiry, it is essential that courts look closely at state law, because the predicate conviction is most often, though not always, a state offense.

33

But this is also a <u>federal</u> sentencing proceeding, and in insisting that the inquiry involve a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the" federal enhancement, <u>Duenas-Alvarez</u>, 549 U.S. at 193, <u>Duenas-Alvarez</u> and <u>James</u> sought to head off the possibility that dicta and hypotheticals in state court decisions would drive federal sentencing practice. In refusing to apply these two Supreme Court decisions, the majority has opened federal sentencing to every stray state court pronouncement and seriously impaired the federal/state sentencing balance.

The majority's errant conclusion that Maryland has departed from the common understanding of the resisting arrest offense also introduces disuniformity into federal sentencing and exacerbates a conflict within the circuits. As a result of this decision, there is now a dramatic difference in how the circuits approach the use of force against arresting officers. For example, in <u>United States v. Carthorne</u>, 726 F.3d 503, 512, 514, 515 (4th Cir. 2013), a closer case, frankly, than this one is, the court properly canvassed Virginia cases and held that assault and battery of a police officer (ABPO) did not qualify as a crime of violence. In doing so, the court acknowledged an open conflict with the First, Tenth, and Eleventh Circuits. <u>Id.</u> at 516. But that split, while perhaps narrow and tolerable, is

now blasted wide. By rejecting the Supreme Court's approach in Duenas-Alvarez and James, the majority not only has ensured that the categorical approach is no longer a neutral legal principle (but instead a code word for categorical nonviolence). It has also effectively guaranteed that violent force leveled at police officers in the course of resisting an arrest will never be treated by the court under force clauses as a violent crime.

Quite apart from the fact that officers on the receiving end of violent attacks upon their person will wonder what in the world we are doing, the departure from the sound approach shared by the Supreme Court, the Maryland judiciary and our sister circuits is, to understate the matter, a prescription for problems down the road.

### III.

An arrest, by its nature, is a tense and volatile event. The aim of law should be, so far as possible, to preserve dignity and humanity on both sides of the encounter, even where the respective principals have failed to do so.

Arrestees are entitled to be treated with dignity and respect. They are not objects to be gratuitously brutalized, no matter what their respective offenses may prove to be. Where officers use unwarranted force, courts have historically held them to account. Excessive force claims are an established and important part of our law. See Graham v. Connor, 490 U.S. 386,

395 (1989). In the arrest context, it is the Fourth Amendment that shields citizens from "physically abusive governmental conduct." Id. at 394. Notably, the Maryland cases cited in the appendices contain no suggestion of excessive force applied by officers that in turn provoked the violent responses on the part of those they arrested.

Law enforcement officers, too, are deserving of dignity, not to mention physical safety. Officers may not be popular figures (except perhaps when one needs them), but they do play their necessary part in permitting law to function as law. Here they were doing what they had every right to do: make a lawful arrest. I do not believe appellant thinks officers are blocks of wood or slabs of stone, but the shrug of indifference which he invites as our response to violent acts committed against them suggests to the contrary. The one who dons a uniform is not thereby dehumanized. No occupation need numb us to the fact that all persons, officers and arrestees alike, feel the sting of violent and aggressive acts. It is sad, really, that courts would strip protection from those whom Congress wished to protect, and in so doing, sever law so dramatically from the law enforcement function.

It is sad too that my friends in the majority had the chance to invest with equal dignity both sides of this fraught encounter, but now that chance has been lost. It is altogether

good and right that excessive force on the part of police is actionable under federal law, but it is profoundly wrong that violence against those very same persons is without the proper federal statutory effect. There is no question that resisting arrest must involve violent force directed at the person of arresting officers. It is a crime of violence. More than that, it is an affront to law. I have gathered Maryland cases in two appendices to make my point. From them, the reader can readily discern that the crime involves violence directed at arresting officers "in the ordinary case," James, 550 U.S. at 208, and that there is no "realistic probability," Duenas-Alvarez, 549 U.S. at 193, that the offense would be sustained in the absence of the same. I do recognize that reading appendices can be a mighty boring exercise, and yet there are occasions when the silent roll of cases sounds a fitting end.

## **Appendices**

I.

## Resisting Arrest Decisions of the Maryland Court of Appeals

- Nicolas v. State, 426 Md. 385, 44 A.3d 396, 399–401 (2012) (defendant "pushed" one officer, "hit [another] in the face," fought with one for "two to three minutes" including "grabb[ing] each other and . . . pushing each other against the walls and hitting each other," continued "fighting" and "struggl[ing]" "the whole way" to police car).

- Arthur v. State, 420 Md. 512, 24 A.3d 667, 670 (2011) (defendant "struggle[d] as three officers attempted to arrest him," "continued kicking and pulling," caused officer to sprain ankle).

- Wilson v. State, 409 Md. 415, 975 A.2d 877, 881–82 (2009) (defendant "struggle[d]" as officer attempted to place handcuffs on him).

- Polk v. State, 378 Md. 1, 835 A.2d 575, 577 (2003) (defendant engaged in a "scuffle" with the arresting officer, and "bit his arm, breaking the skin on his wrist").

- Purnell v. State, 375 Md. 678, 827 A.2d 68, 71–72 (2003) (defendant "resisted [the officers'] attempts to handcuff him, by attempt[ing] to push up, which then required the

officers to push him back down to actually get him handcuffed.").

- <u>Johnson v. State</u>, 358 Md. 384, 749 A.2d 769, 769 (2000) (defendant "kicked and flailed" when officers attempted to effect arrest).

- <u>In re Tariq A-R-Y</u>, 347 Md. 484, 701 A.2d 691, 692 (1997) (defendant "punched and kicked" officers).

- <u>Barnhard v. State</u>, 325 Md. 602, 602 A.2d 701, 703, 708 (1992) (defendant "started swinging [a] loose handcuff" at officers, punched them, and "scuffle[d]" with them).

- <u>Att'y Grievance Comm'n of Md. v. Hamby</u>, 322 Md. 606, 589 A.2d 53, 54 (1991) (defendant "resisted the officer's efforts to arrest him; those efforts included attacking the officer with [a] syringe, after which a wrestling match ensued until the officer received assistance from three other officers").

- <u>Trusty v. State</u>, 308 Md. 658, 521 A.2d 749, 752, 754 (1987) (defendant "struggle[d]" with first officer, which necessitated the intervention of other officers to ultimately subdue him).

- <u>Rodgers v. State</u>, 280 Md. 406, 373 A.2d 944, 945 (1977) (defendant "grabbed [one] [o]fficer . . . around the waist," causing them both to fall to the ground, and

"wielded a straight edged razor and slashed [the] [o]fficer
. . . across the arm, inflicting three wounds").

- <u>Downs v. State</u>, 278 Md. 610, 366 A.2d 41, 43 (1976)
("scuffle ensued" when officer attempted to effect arrest
of defendant).

- <u>Palacorolle v. State</u>, 239 Md. 416, 211 A.2d 828, 829 (1965)
("while enroute to the police station the appellant lunged
at [the] [o]fficer . . . [,] attempting to strike and kick
him").

II.

<u>Resisting Arrest Decisions of the Maryland Court of Special
Appeals</u>

- <u>Gutloff v. State</u>, 207 Md. App. 176, 51 A.3d 775, 777 (2012)
(during a traffic stop, defendant "refused to get out of
the car and proceeded to repeatedly strike [officer's] arm
with the car door").

- <u>Britton v. State</u>, 201 Md. App. 589, 30 A.3d 236, 239 (2011)
(defendant "violently resisted," "punch[ed] and kick[ed]
the officers," injuring three of them, and "continued to
struggle" despite being "tasered two more times").

- <u>Jones v. State</u>, 175 Md. App. 58, 924 A.2d 336, 339-40
(2007) (defendant "swerved" in vehicle "directly toward an
officer, causing him to dive out of the way to avoid being
struck").

- <u>Lamb v. State</u>, 141 Md. App. 610, 786 A.2d 783, 786 (2001) (defendant "struggle[d]" with officer and "punched him three or four times").

- <u>Grant v. State</u>, 141 Md. App. 517, 786 A.2d 34, 38 (2001) (defendant "struggle[d]" against the officers, engaged in "a wrestling match and a fight" with them, and "kicked" and "struck [one] several times [with his] arms and legs").

- <u>Cooper v. State</u>, 128 Md. App. 257, 737 A.2d 613, 615–16 (1999) (defendant "punched [officer] repeatedly in the head," "struck [another] in the face").

- <u>Himple v. State</u>, 101 Md. App. 579, 647 A.2d 1240, 1241 (1994) (defendant "punched and kicked the officer, injuring him").

- <u>Briggs v. State</u>, 90 Md. App. 60, 599 A.2d 1221, 1223 (1992) (defendant threatened officers, "threw his arms up, striking [officer] and knocking [officer's] watch off his wrist," "was fighting violently," "kicked [another officer] close to the groin").

- <u>Washington v. State</u>, 87 Md. App. 132, 589 A.2d 493, 495 (1991) (defendant "struck [o]fficer . . . in the shoulder and knocked him off balance").

- <u>Thomas v. State</u>, 85 Md. App. 201, 582 A.2d 586, 586 (1990) ("During the struggle, a deputy was stabbed with a ballpoint pen and a police officer was struck.").

- <u>Johnson v. State</u>, 75 Md. App. 621, 542 A.2d 429, 432 (1988) (defendant "struck the detective in the stomach and again in the chest").

- <u>Curtin v. State</u>, 60 Md. App. 338, 483 A.2d 81, 84 (1984) (defendant "struggle[d]" for several minutes and broke free before being detained again; he continued to struggle and, "[i]n the course of this [second] melee, [one officer] was struck and kicked and [another] was bitten by the appellant").

- <u>Kraft v. State</u>, 18 Md. App. 169, 305 A.2d 489, 491 (1973) (defendant was "wild and fighting," threatened officers, and was overpowered only after a struggle in which officer was forced to employ mace to gain compliance), <u>overruled on other grounds by</u> <u>Goode v. State</u>, 41 Md.App. 623, 398 A.2d 801 (1979).

- <u>Tillery v. State</u>, 12 Md. App. 624, 280 A.2d 302, 303 (1971) (defendant kicked one officer, attempted to punch two officers, "tore the badge [off a third officer's] uniform and clenched it in his right hand with the pin . . . in an

outward position, swinging . . . in a violent manner at
each of the three [o]fficers").

- <u>Lyles v. State</u>, 10 Md. App. 265, 269 A.2d 178, 180 (1970)
(defendant "tussl[ed] on the floor and wrestl[ed]" with
security guard, "bumped [guard] on the side of the head
[with] nightstick," was charged with "pulling, beating, and
laying hold of" officer).

- <u>Williams v. State</u>, 4 Md. App. 643, 244 A.2d 619, 621 (1968)
("When the officer attempted to place handcuffs on the
appellant, a scuffle arose, with both the officer and the
appellant falling to the floor, during which the appellant
kicked [the officer].").

- <u>Carwell v. State</u>, 2 Md. App. 45, 232 A.2d 903, 905 (1967)
(defendant "became very violent," "struggled for four or
five minutes," "bit" one officer, necessitating medical
treatment, "injured" another, and was only subdued when
several additional officers intervened).

- <u>McIntyre v. State</u>, 1 Md. App. 586, 232 A.2d 279, 280 (1967)
(one defendant "struggl[ed]" with officer; other defendant
got "on top of" officer, "hit[]" him "in the jaw," "took
another swing at [him once] under arrest").

- <u>McGee v. State</u>, 1 Md. App. 239, 229 A.2d 432, 433 (1967)
(defendant "struggled" with officers, "flail[ed] his arms

and push[ed officers] away," "pull[ed], push[ed] and la[id]
hold of . . . officer").